[No. 11920.   Department Two.   July 22, 1914.]

REPETTO AURELIO, *Respondent*, v. PUGET SOUND ELECTRIC RAILWAY, *Appellant*.[1]

RAILROADS—NEGLIGENCE—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.  The negligence of a motorman of an interurban train in colliding with a load of wood at a private farm crossing, and the contributory negligence of the driver of the team, are questions for the jury, where there was evidence that the train was running at the rate of fifty miles an hour when the motorman first saw the horses coming into view up a steep grade, about ten feet distant from the track, he being able to see the team before the driver could see the train, that, before reaching the foot of the grade, the driver went ahead, and with a view of the track for about 2,500 feet, could not see or hear any train, and at once started to rush the team across, and looking a second time, when his horses had about crossed, saw a car approaching from five to six hundred feet away, that the train caught the rear wheels of the wagon and stopped after running about 300 feet, and could have been brought to a stop within 800 to 1,000 feet if running at 50 miles per hour.

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered October 1, 1913, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained in a collision with an interurban train.  Affirmed.

*James B. Howe* and *Hugh A. Tait*, for appellant.

*Frank S. Griffith*, for respondent.

MORRIS, J.—Respondent was slightly injured in a collision between one of appellant's interurban trains and a wagon upon which he was riding.  Two grounds of negligence were alleged, excessive speed and negligent operation of the train.  Respondent obtained a judgment for $625, and the appeal urges insufficiency of the evidence to sustain it, with contributory negligence of respondent.

[1]Reported in 141 Pac. 1030.

The jury having resolved all questions of fact in respondent's favor, the record must be read most strongly against appellant's contention.   So reading it, these facts appear: Near Cardmore, the appellant maintains a private crossing over the lands of Peter Cerini.   This crossing is cut off from the private way of which it is a part by gates, the gate on the east side being forty-six feet distant from the east or north-bound track.   The tracks are upon an embankment, so that, in crossing from the east, the tracks are approached upon a "heavy grade," the extent of the grade not being disclosed except as above.   Approximately 2,500 feet south of this crossing, the railway crosses the Duwamish river, and between the bridge and the crossing, the tracks curve around a bluff, so that, while the crossing is in view from the bridge, one driving over it from the east would have a somewhat obstructed view to the south, opening up as the tracks were approached.   The extent of this view to the south from the eastern gate and the greater view as one approached the tracks is not shown by the evidence.

The respondent testifies that, on the day of the accident, he came to the eastern gate with a load of wood; that he stopped the team, opened the gate, and walked to the easterly rail of the crossing, looking in both directions for an approaching train; that he could then see the tracks to the south as far as the bridge over the river; that he looked and listened, but neither saw nor heard any approaching train; that he then went back to his wagon, climbed into his seat, untied the reins, released the brakes, and started the team for the crossing.   His language follows:   "When I got to the track, I looked again to see whether I could see any car coming.   Then, as I had a heavy load and was afraid of getting stuck, I rushed my horses up to the track in order to cross it quick, and when I got in the middle of the track with the horses about—with the fore feet of the horses on the furtherest track—on the furtherest rail—I looked and I

could see a car coming." "It might have been five or six to eight hundred feet away." "Just peeping around the curve." On cross-examination, he says: "When I looked the second time, my team was standing with the fore feet of the horses on the first rail." The car struck the hind wheels of the wagon and came to a stop three hundred feet to the north of the crossing. The motorman says the train was running fifty miles an hour when he first saw the horses coming into view, about ten feet east of the track and between four and five hundred feet distant. The distance within which this train could be stopped, as shown by the only testimony on that subject, was from eight hundred to one thousand feet.

It seems to us we have here two questions of fact for the jury: First, how far from the crossing was the train when the motorman first saw the team about to enter upon the crossing, and did he then use ordinary skill in attempting to avoid the collision? In answering this question it must be conceded that, because of the bluff and the curve, the motorman could see the horses before the respondent on the wagon could see the train. The second question is as to the contributory negligence of the respondent, taking into consideration what he knew as to the speed and frequency of trains over this crossing and what precautions he took to avoid the collision. If there was no testimony that respondent looked the second time before driving upon the track, we might hold that he was guilty of contributory negligence, as urged by appellant, under the rule of numerous cases from this and other courts. But there is some testimony that he did look. We quote again: "When I got to the track I looked again to see whether I could see any car coming. When I looked the second time, my team was standing with the fore feet of the horses on the first rail." We know the train was traveling 73 1-3 feet per second, but we do not know how fast the team was traveling, and and so we cannot say whether, at the time of this second look, the train was within the danger zone.

We only know that, when the horses reached the west track, the train was "five or six or eight hundred feet away." There is so much leeway in determining the various questions to be answered before we can find contributory negligence, as a matter of law, that we conclude that, under the circumstances here presented, they must be answered by the jury and not by us.

The judgment is affirmed.

CROW, C. J., PARKER, MOUNT, and FULLERTON, JJ., concur.